### CORLISS v. DANIEL.

(Circuit Court of Appeals, Eighth Circuit. March 20, 1924.)

#### No. 6447.

Bankruptcy ⬳241 (2)—Refusal of indicted corporate officer to testify in bankruptcy proceedings, without first refreshing memory from books, held not contempt.

 A witness in bankruptcy proceedings before a referee, who, as managing officer of bankrupt corporation, was indicted for acts connected with the affairs of bankrupt corporation, *held* not guilty of contempt because he refused to state his recollection of transactions without first refreshing his memory by reference to the corporate books, which were present, on the ground that his answers might be used against him in the criminal proceeding, and that he must therefore be careful of his answers.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Le Roy Corliss was adjudged guilty of contempt in proceedings before a referee in bankruptcy, brought by Herbert S. Daniel, trustee, and he brings error. Reversed.

T. S. Allen, of Lincoln, Neb. (H. J. Requartte, of Lincoln, Neb., on the brief), for plaintiff in error.

W. C. Fraser, of Omaha, Neb. (F. A. Mulfinger, of Omaha, Neb., on the brief), for defendant in error.

Before STONE and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

STONE, Circuit Judge. This is error from an order adjudging Corliss guilty of contempt. Corliss was managing officer in control of several corporations. The affairs of these companies had become seriously involved and one of them was in course of bankruptcy. At the same time, Corliss was under indictment for acts in connection with one or more of these companies. In the bankruptcy proceeding, Corliss was placed upon the stand and interrogated concerning the

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

amounts of capital stock issued and canceled by two of these companies. Some of his answers were vague and useless. He stated that the stock books and minutes books of the two companies would show the transactions truly; that he did not recollect the matters sufficiently to hazard a "guess" without first refreshing his memory by reference to these records; that he would answer the questions if permitted to make such examination. The two following extracts from the testimony are typical and will serve to reveal the entire situation. The first is:

"I have not an exact recollection, and I am not going to answer until I do. This is a matter of record, and it will be used, probably, against me, and I will have to stand on that answer. I have a right to refresh my memory to answer these questions on a deal five years old, as to whether it was completed or not, and I have some rights in the matter, in view of the fact that I am threatened constantly with criminal prosecution, and these things will affect me absolutely and will be used against me in every possible way they can do it.

"Q. Let's follow up a little on that. Who ever threatened you with prosecution except as to complainants that have been dismissed and cases that have been tried? A. Your friend, the United States attorney, made the statement that they had found enough fraud so they would get the accounts of the company out of me.

"Q. Is that criminal prosecution or threatened? A. I don't know what else you would call it after the tirade that I received at his hands in the United States court.

"Q. In the process of trial? A. No, that wasn't when he said it. He said that among other things. I want you to understand my position. You come in here with the idea of prosecuting me criminally and work out these things, and then you use them afterwards, and I have got to be pretty careful.

"The Referee: Pardon me, this is no criminal prosecution. This is an inquiry into the affairs of the bankrupt, for the purpose of ascertaining the condition of the bankrupt estate. That is all this is, and you are required to answer fairly these questions. A. Yes, I know, and I am answering as fairly as I can. The books and records of the company have been out of my possession, some of them, for two years.

"The Referee: Well, now, you can't hide back of that every time and say the books and records will show. That won't do. If you can't state it exactly, you can state your recollection of it, but you can't say each time in answer to the question, 'Well, I don't know, the books and records will show,' because that is not a fair answer.

"By Mr. Fraser: Q. Now, have you any desire to make any further statement? A. Same answer as the last time.

"Q. That is, the books and records will show, and you rely on that? A. Absolutely.

"The Referee: And you refuse to state your recollection? A. I don't think I do refuse to state it.

"The Referee: Well, I would so understand it. A. I don't just remember until I can refresh my memory.

"The Referee: But you do have a recollection of it? A. I have a recollection of that resolution.

"The Referee: But don't you have a recollection of what you got? A. No sir, I don't think I have.

"The Referee: I thought you stated that you did have a recollection of the transaction in part. A. I can't state exactly and I don't like to give a wrong answer.

"The Referee: Well, but you can state your best recollection.

"Mr. Fraser: Your honor, I don't see as there is any use of proceeding further here.

"The Referee: Well, I have said to the witness if he could state his best recollection he might do that. A. My recollection is that part of that stock

was issued and left in the books of the Alamito Dairy Company and I never handled it, and afterwards some of it was canceled, but the amounts I don't remember. The amount and kind of stock it was I don't remember, but I know there was some stock issued and left in the books of the Alamito Dairy Company, and it was never received or used by me, and part of it was afterwards canceled, and I don't remember the amounts. Of course I have a recollection of the transaction, but the exact facts I can't state until I see the books."

The second is:

"Q. I will ask you to examine Exhibit B and state if you were present at that meeting, and if it recites what took place? A. That is what you read, isn't it, a little while ago?

"Q. Yes. A. Well, if this is an exact copy of the resolution in the books of the company there, I was present when this resolution was passed, my signature shows here.

"Q. Now, when did you turn the Perry Packing Company over to the Waterloo Creamery Company? A. Well, sir, I don't remember when we did.

"Q. Was it in pursuance of the resolution Exhibit A, or Exhibit B? A. Well, I am quite sure that it was not in pursuance of resolution A, although that stock—Mr. Ryner's office handled the stock books, and in pursuance of that resolution that stock might have been issued, but I am quite sure if it was issued it was canceled immediately, because I don't have any recollection of that first transaction going through.

"Mr. Mulfinger: Now, your honor, the trustee renews his application. Here is a transaction between the officer of a company, president, and himself personally, involving, according to the records, as far as we are able to ascertain, two or three hundred thousand dollars. We can't get anything with reference to the deal, although it must be, or should be, within his personal knowledge. Any transaction between the president of a corporation and between himself personally is explainable in a bankruptcy court from his recollection, and he must remember, and we might as well stop here, because there is no sense in our wasting the time of these courts and ourselves and being made a fool of day by day. We may as well find out whether we can get answers to our questions or whether we have got to quit. We have been over other examinations with him and may have had some excuses for letting him go, but now we are entitled to have this thing laid on the table if these courts are powerful enough to do it. If they are not, the time of counsel is wasted.

"The Referee: I rule that the witness must state his best recollection independent of the records, and I will certify the case to the court unless the witness is prepared to state that. A. I think I did give you my recollection of the second resolution there, that one of the resolutions of the Waterloo Creamery Company was Exhibit A, you say, Mr. Fraser? Is that what you call it?

"The Referee: You can look at the resolution. (Mr. Fraser hands him resolution.) A. Well, anyway, (examining resolution) regarding the issuing of the Waterloo Creamery Company stock, it is possible that in pursuance of that resolution that that stock was issued by Mr. Ryner in his department, but I have no recollection of ever receiving it or signing it or using it or having it. The resolution of the issuance of the Alamito stock I have a recollection of that deal being contemplated. I have a recollection of some stock being transferred from the Waterloo Creamery Company into my name, afterwards having some of it canceled, but how much, and the dates and the amounts I don't remember. I can't tell any further than that unless I guess at it, and this is not any time for me to be guessing.

"Mr. Mulfinger: Just read that answer, please. (Reporter reads answer.)

"Mr. Mulfinger: We submit, your honor, that he might as well have said nothing.

"The Referee: It seems to me that the witness must have a recollection as to the amount of stock that was issued. I am not saying now exactly—the exact amount, but some recollection of the amount of stock that was issued and some recollection of the amount of stock that was canceled if it was canceled, and I rule that the witness must state his recollection. A. I have stated my recollection as near as I can.

"The Referee: You have not stated any recollection at all. You have a recollection that some was issued and some canceled, but you don't know what was issued or what amount was not. A. Is there any objection to producing the books of the Alamito Dairy Company so I can give you an answer on that? Those books are available to these lawyers, they are available to them for the purpose of finding out exactly what the deal was, and I am asking for them to refresh my recollection with and my memory.

"Mr. Mulfinger: Your honor, he knows what the deal is. A man transacting a piece of business involving $200,000 of the Waterloo Creamery Company between himself and himself as president of the company, and acting as president in that corporation where the transaction was had, certainly has it peculiarly within his own recollection without the aid of anything. The Alamito books are not a part of this proceeding and are not necessary. It is just one of those occasions where he stalls around, and if he hasn't any further answer than that, we will stop now.

"The Referee: I have already ruled upon the matter, that the witness must state his recollection of the amounts that were issued and the amounts that were canceled. If he is not prepared to state that, I will certify the record. That is all I can do, and the court can deal with him. I have no further responsibility in the matter, and I regard it my duty to certify the record. It is a matter of considerable importance here in administering this estate to know the condition as to the affairs of this company. In fact without it we cannot administer the estate.

"Mr. Fraser: Before the record is closed, I want to ask another question: Mr. Corliss, during the period in 1917 and 1918 referred to in these resolutions, the stock of the Waterloo Creamery Company was being generally sold to the public at par or above par, was it not? A. 1917?

"Q. 1917 and 1918, A. Yes, I think it was.

"Q. And the stock of the Alamito Dairy Company was valued at par or more at that time, was it not? A. I think it was; yes, sir.

"Mr. Mulfinger: Your honor, we would like to have this matter continued until the 26th. We would like to have the record certified and before the court on the 23d of June, at 9 o'clock. We would like to have you instruct the bankrupt at this time that we will take the matter up before the presiding judge in the courtroom, in the United States Post Office Building, at 9 o'clock on the 23d of June, at which time you will order him to be present there, in the city of Omaha; that you order him now to be there. Let us have the record show that, have the record made and we will then continue the meeting until the 26th and see if we get anywhere.

"The Referee: Let it be so ordered.

"Mr. Corliss: In the meantime, will it be possible for me to obtain the Alamito stock book for the purpose of refreshing my recollection on the details of that transfer, so I can answer the question?

"Mr. Mulfinger: Our position is you can answer that question now, and that is the thing we are going to have it certified for, and we are not going to have you come in on the 26th and commence to answer a question or two more. It is going up on this record now. As far as we are concerned, we are not going to come here and ask you a few more questions and come back again, we are going to stand on that record and we are going to get answers here or we are going to quit, one or the other. We are going to get you or you are going to sit down and put your cards on the table and help us administer this estate. You are going to lick us or we are going to lick you, that is where we are. Either one of us is going to go down, it may be us.

"Mr. Corliss: I have offered several times to lay the cards on the table.

"Mr. Mulfinger: You have never done it since I have been in this bankruptcy case.

"The Referee: I will certify the record, and you are advised to be in the federal courtroom on the 23d of June, at 9 o'clock a. m.

"Mr. Corliss: What will that hearing be for, Judge?

"The Referee: That hearing will be upon your contempt for refusing to answer questions. You are further advised to be here on June 26, at 9 o'clock."

It is not contended that these records were not available and could not have been shown Corliss and his examination have proceeded thereafter. The contempt alleged is that Corliss refused to "state his recollection of the transactions inquired about."

Several questions are presented to this court. Our view of one of them disposes of the writ of error. The sufficiency of the evidence to justify the order is challenged. We think the challenge is well made. Corliss was, or thought himself to be, in a rather delicate situation. He expressed the belief that one of the purposes of this examination was to secure material for use against him in connection with criminal charges against him. He said frankly that he must be very careful in his answers; that the books would accurately show the matters about which he was asked; that he did not want to risk his recollection or "guess" about the matter; that he would answer if given an opportunity to see the books. He even requested to be allowed to see the books so he could testify. No reason is revealed why he should not have been shown these records. Under these circumstances, we think the witness was guilty of no contempt in refusing to give his "recollection" of the matters concerning which he was asked.

The judgment is reversed.